[Cite as *State v. Gales*, 2022-Ohio-776.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 29316 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ELLIOTT GALES | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 17 10 3553 |

DECISION AND JOURNAL ENTRY

Dated: March 16, 2022

SUTTON, Judge.

{¶1} Defendant-Appellant, Elliott Gales, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms in part, reverses in part, and remands for further proceedings.

I.

{¶2} The Akron Police Department began investigating Mr. Gales after receiving a tip that he was selling drugs out of his apartment. Members of the Street Narcotics Uniform Detail ("SNUD") Unit conducted surveillance at his residence and arranged for a controlled buy, during which an informant successfully purchased from Mr. Gales a substance that tested positive for the presence of fentanyl. Based on the results of the investigation that took place, a search warrant for the apartment was obtained. Mr. Gales was at home when officers executed the warrant and attempted to flee when they breached his back door. Upon searching his apartment, the police uncovered over 35 grams of cocaine, over 10 grams of crack cocaine, a large quantity of stimulants

identified as NoDoz, several scales, two blenders containing white powder, baggies and spoons, two handguns with filed down serial numbers, and $4,061 in cash.

{¶3}  Mr. Gales was indicted on charges of trafficking in cocaine, possession of cocaine, aggravated trafficking in fentanyl, possession of fentanyl, having a weapon under disability, and possessing a defaced firearm.  His two trafficking counts also contained forfeiture specifications for the cash the police seized from his apartment.  It is undisputed that the State later dismissed the counts related to fentanyl and one of the forfeiture specifications.

{¶4}  The trial court appointed counsel for Mr. Gales, but a breakdown in communication led his attorney to withdraw as well as two other attorneys that the trial court later appointed to represent him.  Following the withdrawal of his third attorney, Mr. Gales chose to represent himself, and the matter proceeded to trial.  A jury found Mr. Gales guilty on all counts, and the trial court merged his trafficking and possession counts as allied offenses of similar import.

{¶5}  The trial court sentenced Mr. Gales to six years on his trafficking count, three years on his count for having a weapon under disability, and 180 days on his count for possessing a defaced firearm.  The court ordered the first two terms to run consecutively for a total of nine years in prison and ordered the 180-day term to run concurrently with that sentence.  The court further ordered the forfeiture of the cash seized from Mr. Gales' residence.

{¶6}  Mr. Gales now appeals from the trial court's judgment and raises seven assignments of error for this Court's review.  For ease of analysis, we rearrange and consolidate several of his assignments of error.

II.

**ASSIGNMENT OF ERROR II**

**THE TRIAL COURT ERRED IN DENYING [MR. GALES'] OMNIBUS MOTION TO SUPPRESS EVIDENCE.**

{¶7}    In his second assignment of error, Mr. Gales argues that the trial court erred when it denied his motion to suppress.  According to Mr. Gales, the affidavit used to obtain the search warrant for his apartment did not establish probable cause for the search because it contained stale information regarding an isolated incident.  For the following reasons, this Court rejects his argument.

{¶8}    When moving to suppress evidence, "the defendant must make clear the grounds upon which he challenges the submission of evidence pursuant to a warrantless search or seizure." *State v. Peagler*, 76 Ohio St.3d 496, 500 (1996).  *Accord State v. Shindler*, 70 Ohio St.3d 54 (1994), syllabus.  "The prosecutor must know the grounds of the challenge in order to prepare his case, and the court must know the grounds of the challenge in order to rule on evidentiary issues at the hearing and properly dispose of the merits."  *City of Xenia v. Wallace*, 37 Ohio St.3d 216, 218 (1988).  "Limiting suppression hearings to issues that are actually contested promotes judicial economy by ensuring that parties do not put on unnecessary evidence and that trial courts do not consider extraneous issues."  *State v. Wintermeyer*, 158 Ohio St.3d 513, 2019-Ohio-5156, ¶ 23. "[W]hen a defendant makes stipulations or narrows the issues to be decided at a suppression hearing, the prosecution need not 'prove the validity of every aspect of the search.'"  *Id.* at ¶ 19, quoting *Peagler* at 500.  "Failure on the part of the defendant to adequately raise the basis of his challenge constitutes a waiver of that issue on appeal."  *Wallace* at 218.

{¶9}    When Mr. Gales filed his written motion to suppress, he moved to suppress any statements taken from him or evidence retrieved from his apartment on the basis that the police

lacked a lawful cause to detain him, lacked probable cause to arrest him, failed to properly advise him of his *Miranda* rights, and questioned him in violation of his *Miranda* rights. He also wrote that he was challenging "the sufficiency of probable cause regarding the affidavit in support of the obtained warrant." While his written motion set forth the general law regarding the sufficiency of search warrants and their supporting affidavits, it did not apply any of that law to the facts of his case or the affidavit underlying the search warrant for his apartment.

{¶10} At the start of the suppression hearing, the prosecutor asked Mr. Gales "to put on the record what the issues [were]." He responded that he was challenging "the submission via the affidavit, the validity of the warrant, the unlawful search of [his] home, the unlawful seizure of the potential evidence and any statements that were unlawfully obtained by the law enforcement officials * * *." The State then notified the court that, with respect to Mr. Gales' challenge to the warrant and supporting affidavit, it intended to introduce and rely on copies of those items rather than calling the affiant or another officer to testify as a witness. Mr. Gales objected to that procedure and argued that the warrant and affidavit could not be introduced into evidence without the testimony of a records custodian "or someone to establish the origin of that document * * *." The court heard arguments, overruled his objection, and allowed the State to proceed. The State introduced the warrant, its supporting affidavit, and the testimony of an officer who described the search at Mr. Gales' apartment, the *Miranda* warnings Mr. Gales received, and the statements he made during the search. When cross-examining the officer, Mr. Gales questioned him about his personal knowledge of the facts contained in the affidavit.

{¶11} At the close of the suppression hearing, Mr. Gales addressed the court and challenged the sufficiency of the search warrant affidavit on the basis that it had not been corroborated in court by the affiant. Mr. Gales argued:

An affidavit is a sworn statement. Well, if we have the individual not present today to give legitimacy to the sworn facts that were alleged to be the basis for the search warrant, and without that, Your Honor, without that affidavit being sufficient in the eyes of the law, then the search warrant that yields from that cannot be sufficient within the eyes of the law as well.

Therefore, anything seized and/or taken * * * pursuant to the same would not be lawful and would not be sufficient in the eyes of the law.

Mr. Gales did not allege that he was challenging the sufficiency of the search warrant or its supporting affidavit on any other basis.

{¶12}   In ruling on Mr. Gales' motion to suppress, the trial court focused almost entirely on the *Miranda* aspect of his motion. With respect to the search warrant and its supporting affidavit, the court found that Mr. Gales was challenging the admissibility of the warrant at the suppression hearing. The court rejected his argument, concluding that the evidence presented was properly considered as it "[fell] within an exception to the applicability of the rules of evidence * * *." The trial court did not address whether the search warrant affidavit was supported by probable cause. Thereafter, Mr. Gales never claimed that the trial court failed to rule on any suppression-related issues.

{¶13}   On appeal, Mr. Gales now argues that the trial court erred by denying his motion to suppress because the search warrant affidavit was not supported by probable cause. He argues that the affidavit contained stale information about an isolated incident, i.e., information about a controlled buy that allegedly occurred fourteen days before the execution of the warrant. According to Mr. Gales, the affidavit did not contain any timely information, so officers could not rely on the stale information contained therein "with any supposed good-faith belief that [the] information was sufficient." Further, he argues that the trial court failed to issue a well-reasoned opinion, explaining why the search warrant affidavit was supported by the requisite probable cause.

{¶14} Upon review of the record, we cannot conclude that Mr. Gales placed the State and trial court on notice that he wished the foregoing issues to be heard and decided by the trial court. *See Peagler*, 76 Ohio St.3d at 500; *Wallace*, 37 Ohio St.3d at 218. His written motion did not challenge any particular aspect of the search warrant affidavit or reference the controlled buy described therein. Moreover, at the suppression hearing, he argued that the affidavit was not sufficient *because the State failed to have the affiant testify*. The trial court understood his argument to be a challenge to the admissibility of the State's evidence, and Mr. Gales did not dispel the trial court of that narrow interpretation of his argument. *See Wintermeyer*, 158 Ohio St.3d 513, 2019-Ohio-5156, at ¶ 19 (noting that the State need not prove the validity of every aspect of a search when the defendant narrows the issues to be decided at the suppression hearing). Mr. Gales cannot prevail upon an argument he failed to make at the suppression hearing. *See Wallace* at 218; *Wintermeyer* at ¶ 19. When he presented the trial court with a limited argument, he forfeited his opportunity to raise additional suppression issues on appeal. *See State v. Walters*, 9th Dist. Medina No. 11CA0039-M, 2012-Ohio-2429, ¶ 6; *State v. Brown*, 9th Dist. Summit No. 22770, 2006-Ohio-1905, ¶ 7. Accordingly, for the foregoing reasons, Mr. Gales' second assignment of error is overruled.

**ASSIGNMENT OF ERROR I**

**[MR. GALES] WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS PRIOR COUNSEL FAILED TO PROPERLY AND TIMELY PRESENT OFFER OF PROOF TO SUPPORT HIS FRANKS CLAIM.**

{¶15} In his first assignment of error, Mr. Gales argues that he received ineffective assistance of counsel because his former counsel did not submit an offer of proof in support of his

request for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).[1]  Upon review, this Court rejects Mr. Gales' first assignment of error.

{¶16}  To prove ineffective assistance of counsel, an appellant must establish both that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Counsel's performance is deficient if it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus.  To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.* at paragraph three of the syllabus.  If a defendant fails to prove one prong under *Strickland*, this Court need not address the other prong. *State v. Lortz*, 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶ 34.

{¶17}  Notably, Mr. Gales proceeded to trial pro se.  The general rule is that "[t]he law pertaining to effective assistance of counsel does not apply when the defendant exercises his right to self-representation." *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 82.  That is because the "constitutional right to represent oneself would become a hollow right and its assertion would most likely be rejected with regularity if pro se defendants were permitted to assign as error their own ineffectiveness." *Id.* at ¶ 83.  It is Mr. Gales' contention, however, that he received ineffective assistance of counsel prior to the removal of his counsel and his decision to proceed pro se. *See State v. Doyle*, 4th Dist. Pickaway No. 04CA23, 2005-Ohio-4072, ¶ 21-26.  He seeks to challenge not his own ineffectiveness, but the alleged ineffectiveness of his former counsel.  Assuming

---

[1] While this assignment of error also touches upon the validity of the search warrant affidavit executed herein, Mr. Gales raised his argument and request for a hearing under *Franks v. Delaware* by way of a separate motion.  The trial court considered the motion apart from his motion to suppress and issued separate findings.  Thus, Mr. Gales did not forfeit this issue by failing to raise it in his motion to suppress or at his suppression hearing.

without deciding that his ineffective assistance of counsel argument is properly before us, we nevertheless conclude that it lacks merit.

{¶18} "There is * * * a presumption of validity with respect to the affidavit supporting [a] search warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). "In *Franks* * * *, the United States Supreme Court squarely addressed the issue of when a defendant, under the Fourth Amendment, is entitled to a hearing to challenge the veracity of the facts set forth in the warrant affidavit after the warrant has been issued and executed." *State v. Roberts*, 62 Ohio St.2d 170, 177 (1980).

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*Franks* at 171. Importantly, even if the foregoing requirements are satisfied, "an evidentiary hearing * * * is not mandated by the Fourth Amendment if, after the affidavit material alleged to be false is excluded from the affidavit, there remains sufficient content in the affidavit to support a finding of probable cause." *Roberts* at 178. *Accord Franks* at 171-172.

{¶19} The record reflects that Mr. Gales' former counsel requested an evidentiary hearing pursuant to *Franks v. Delaware* to challenge the validity of the affidavit underlying the search warrant for Mr. Gales' apartment. It was Mr. Gales' position that the affidavit contained a false statement. Specifically, he challenged the affiant's statement that a controlled buy was conducted at the apartment within fourteen days of the filing of the warrant affidavit. Mr. Gales was prepared to offer testimony that he did not sell drugs to a confidential informant at his apartment within those two weeks. The trial court refused to conduct a hearing on the issue, however, finding that

Mr. Gales had not tendered a sufficient offer of proof. Mr. Gales now claims that he received ineffective assistance of counsel because his former counsel failed to "submit an offer of proof of some type" in support of his claim. According to Mr. Gales, had his counsel submitted even a detailed affidavit in support of his claim, he would have been entitled to an evidentiary hearing.

{¶20} As previously noted, even when a sufficient offer of proof has been made under *Franks v. Delaware*, no evidentiary hearing is required if, "after the affidavit material alleged to be false is excluded from the affidavit, there remains sufficient content in the affidavit to support a finding of probable cause." *Roberts* at 178. *Accord Franks* at 171-172. Mr. Gales has not addressed the remainder of the information included in his search warrant affidavit. That information included statements that (1) Mr. Gales told an information source he had fentanyl for sale, (2) a second independent and reliable information source reported Mr. Gales was trafficking fentanyl and other narcotics out of his apartment, (3) Mr. Gales had a history of drug offenses including trafficking and possession, and (4) members of the SNUD Unit observed signs indicative of drug activity while performing surveillance at Mr. Gales' apartment (i.e., individuals entering and exiting the apartment in a short period of time and known prostitutes coming and going from the apartment). Mr. Gales has made no attempt to explain why the foregoing information would not have been sufficient to support a finding of probable cause, *see Roberts* at 178, and this Court will not construct an argument on his behalf. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998). Upon review, Mr. Gales has not shown that, but for his former counsel's failure to submit an offer of proof in support of his *Franks v. Delaware* claim, he would have received an evidentiary hearing. *See Bradley*, 42 Ohio St.3d 136 at paragraph three of the syllabus. Thus, this Court cannot conclude that he has established his

claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687. Mr. Gales' first assignment of error is overruled.

## ASSIGNMENT OF ERROR V

**THE GUILTY VERDICT ON THE CRIMINAL FORFEITURE SPECIFICATION AS TO COUNT I WAS LEGALLY INSUFFICIENT AS A MATTER OF LAW.**

**{¶21}** In his fifth assignment of error, Mr. Gales argues that his criminal forfeiture specification is based on insufficient evidence. The State concedes that it did not present evidence in support of the forfeiture specification in its case-in-chief, and, upon review, this Court agrees.

**{¶22}** "Proceeds derived from or acquired through the commission of an offense" are subject to criminal forfeiture under R.C. 2981.04 or civil forfeiture under R.C. 2981.05. Former R.C. 2981.02(A)(2). The term "proceeds" means "any property derived directly or indirectly from an offense[,]" including money. R.C. 2981.01(B)(11)(a). When Mr. Gales committed his indicted offenses on September 26, 2017, the criminal forfeiture statute provided as follows:

> If a person * * * is convicted of * * * an offense * * * and the * * * indictment * * * contains a specification covering property subject to forfeiture * * *, the trier of fact shall determine whether the person's property shall be forfeited. If the state * * * proves by clear and convincing evidence that the property is in whole or part subject to forfeiture under section 2981.02 of the Revised Code, * * *, the trier of fact shall return a verdict of forfeiture that specifically describes the extent of the property subject to forfeiture. If the trier of fact is a jury, on the offender's * * * motion, the court shall make the determination of whether the property shall be forfeited.

Former R.C. 2981.04(B). "Clear and convincing evidence is that measure or degree of proof which is more certain than a mere 'preponderance of the evidence,' * * * and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶23} It is undisputed that, during the execution of the search warrant at Mr. Gales' residence, the police found a total of $4,061 in cash. Some of the cash was "loose money [found] around the apartment," and the rest was rubber-banded together and concealed inside two socks found in Mr. Gales' bedroom closet. The State argued that the entire $4,061 was subject to forfeiture because it constituted proceeds from Mr. Gales' drug trafficking. The jury, by special interrogatory, found that the $4,061 was subject to forfeiture.

{¶24} Mr. Gales argues that his criminal forfeiture specification is based on insufficient evidence because the State failed to link the $4,061 found inside his apartment to drug trafficking. He argues that there was no testimony to establish that the money was derived directly or indirectly from an offense such that it constituted proceeds. The State concedes that it did not present evidence to that effect in its case-in-chief, and, upon review, the record supports that concession.[2]

{¶25} During the State's case-in-chief, the State only presented testimony that the police found a total of $4,061 in cash when they searched Mr. Gales' residence. There was no testimony tying that money to a criminal offense. For example, no one testified that Mr. Gales

---

[2] Notably, the trial court instructed the jury that it was the State's burden to prove, by a preponderance of the evidence, that the $4,061 was subject to forfeiture. *See* Former R.C. 2981.04(B), 2006 H 241. The criminal forfeiture specification statute was amended five months before Mr. Gales committed his offenses, however, and the newly amended statute elevated the State's burden of proof. *Compare* Former R.C. 2981.04(B), 2006 H 241, *with* Former R.C. 2981.04(B), 2016 H 347. Under the newly amended version of the statute, it was the State's burden to prove, by clear and convincing evidence, that the $4,061 was subject to forfeiture. *See* Former R.C. 2981.04(B), 2016 H 347. Because the State has conceded and the record reflects that the State failed to meet its burden of production under the less demanding standard, that same conclusion likewise applies under the more demanding standard.

lacked any legitimate source of income, that it is common for individuals engaged in drug trafficking to have large amounts of cash on hand, or that drug offenders routinely store illicit funds in a certain manner. The fact that Mr. Gales had just over $4,000 at his residence, standing alone, was not enough to establish that the money was derived directly or indirectly from an offense. *See* R.C. 2981.01(B)(11)(a). Accordingly, Mr. Gales' fifth assignment of error is sustained.

## ASSIGNMENT OF ERROR VI

**[MR. GALES'] CONVICTION OF DRUG POSSESSION AND DRUG TRAFFICKING, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

**{¶26}** In his sixth assignment of error, Mr. Gales argues that his convictions for trafficking in cocaine and possession of cocaine are against the manifest weight of the evidence. We disagree.

**{¶27}** "[W]hen considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, 'weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Perkins*, 9th Dist. Wayne No. 20AP0031, 2021-Ohio-2630, ¶ 11, quoting *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26.

**{¶28}** The crime of trafficking in cocaine occurs when a person knowingly distributes cocaine or prepares it for distribution with knowledge or reasonable cause to believe the cocaine is intended for sale or resale by him or another person. R.C. 2925.03(A)(2)/(C)(4). The crime of

possession of cocaine occurs when a person knowingly obtains, possesses, or uses cocaine. R.C. 2925.11(A)(C)(4).

{¶29} Mr. Gales argues that the jury lost its way when it convicted him of trafficking in cocaine and possession of cocaine because the evidence only showed that the police found cocaine inside his leased apartment. He notes that a female was also present when the police executed their search warrant, and there was testimony that Mr. Gales sometimes allowed family members to stay at his apartment. Further, Mr. Gales notes, there was no DNA or fingerprint evidence to support the State's case against him.

{¶30} Detective Todd Sinsley, a member of the SNUD unit, testified that his unit began investigating Mr. Gales after receiving information from a neighbor of Mr. Gales and a confidential informant, both of whom reported that Mr. Gales was engaging in drug activity. The detective testified that the SNUD unit conducted a controlled buy and successfully purchased drugs from Mr. Gales. A search warrant then was obtained and executed at Mr. Gales' apartment.

{¶31} Detective Sinsley testified that, when officers loudly announced their presence and breached the back door of Mr. Gales' apartment, Mr. Gales attempted to flee through the front door. He was secured and remained on scene as officers began searching the apartment. During the search, the police found over 35 grams of cocaine inside a sock on the dining room table, a large quantity of white powder under the dining room table, a blender on the dining room table that contained white powder, a blender in the kitchen that also contained white powder, a digital scale and spoons and baggies on the dining room table, a second digital scale in the kitchen, a large quantity of a stimulant identified as NoDoz in the bedroom closet, three cell phones on a coffee table in the living room, over 10 grams of crack cocaine inside a dresser drawer in the bedroom,

loose pills and sandwich bags on top of the dresser, and two loaded handguns with filed down serial numbers.

{¶32} Regarding the two blenders, Detective Sinsley testified that both blenders were actively running when the police breached the apartment. He testified that he instructed the other officers to be careful when removing the lids from the blenders because the powder inside might be dangerous. Mr. Gales was still present on scene when Detective Sinsley made that statement. The detective testified that, in response to the statement he made to his fellow officers, Mr. Gales said there was nothing inside the blenders that would hurt the officers.

{¶33} Mr. Gales testified in his own defense. He did testify that he was not the only one who lived at the apartment because he "[had] a woman" and sometimes welcomed family members who might need a place to stay for a few weeks. It was not his testimony, however, that either the woman or his family members were preparing cocaine for distribution inside his apartment. Mr. Gales maintained that the police had planted all of the evidence at his apartment. He claimed that a detective wanted to frame him because they had a mutual interest in a female.

{¶34} Upon review of the record, this Court cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it found Mr. Gales guilty of trafficking in cocaine and possession of cocaine. *See Otten*, 33 Ohio App.3d at 340. The jury heard testimony that Mr. Gales sold narcotics to an informant during a controlled buy, that significant amounts of drugs and related paraphernalia were found inside his apartment, and that Mr. Gales attempted to flee when the police entered his apartment. *See State v. Nichols*, 9th Dist. Summit No. 24900, 2010-Ohio-5737, ¶ 11, quoting *State v. Taylor*, 78 Ohio St.3d 15, 27 (1997) ("It is an established principle of law that '[f]light from justice * * * may be indicative of a consciousness of guilt.'"). The jury also heard testimony that two blenders were actively running when the police entered, and Mr. Gales

told the officers that the powder inside the blenders would not harm them. Although Mr. Gales claimed that the police planted the evidence inside his apartment, several officers denied that the evidence had been planted. As the trier of fact, the jury was in the best position to evaluate the credibility of the witnesses and resolve any conflicts in that regard. *See State v. Bullard*, 9th Dist. Wayne No. 20AP0032, 2021-Ohio-4044, ¶ 14. Mr. Gales has not shown that this is the exceptional case in which the evidence weighs heavily against his convictions. *See Croghan*, 2019-Ohio-3970, at ¶ 26. As such, we cannot conclude that his convictions for trafficking in cocaine and possession of cocaine are against the manifest weight of the evidence. Mr. Gales' sixth assignment of error is overruled.

## ASSIGNMENT OF ERROR VII

**THE GUILTY VERDICTS FOR THE WEAPONS CHARGES ARE AGAINST THE MANIFEST WEIGHT OF EVIDENCE.**

{¶35} In his seventh assignment of error, Mr. Gales argues that his weapons charges are against the manifest weight of the evidence. Mr. Gales' entire argument consists of a single sentence wherein he indicates that the arguments he raised in his sixth assignment of error "are hereby incorporated by reference." Yet, Mr. Gales "cannot 'incorporate the arguments contained in the other assignments of error to support a different assignment of error.'" *State v. Calhoun*, 9th Dist. Summit No. 29604, 2021-Ohio-1713, ¶ 24, quoting *State ex rel. Midview Local School Dist. Bd. of Edn. v. Ohio School Facilities Comm.*, 9th Dist. Lorain No. 16CA010991, 2017-Ohio-6928, ¶ 29. "By doing so, [he] improperly asks this Court to extrapolate and apply [his] argument in a prior assignment of error." *State ex rel. Midview Local School Dist. Bd. of Edn.* at ¶ 29. It is an appellant's burden to "set forth a separate argument for each assignment of error." *Id.*, citing App.R. 12(A)(2) and 16(A)(7). Because Mr. Gales has failed to articulate an argument in support of his seventh assignment of error, he has not established that any error occurred. *See State v.*

*Knight*, 9th Dist. Summit No. 29057, 2019-Ohio-2990, ¶ 12.  As such, Mr. Gales' seventh assignment of error is overruled.

**ASSIGNMENT OF ERROR IV**

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO MAKE REQUIRED FINDINGS ON THE RECORD PRIOR TO SENTENCING [MR. GALES] TO SERVE CONSECUTIVE SENTENCES.**

**{¶36}**  In his fourth assignment of error, Mr. Gales argues that the trial court erred when it sentenced him to consecutive prison terms without making the required statutory findings under R.C. 2929.14(C)(4).  The State concedes that the trial court failed to make each of those findings at the sentencing hearing.  Upon review, this Court sustains Mr. Gales' fourth assignment of error.

**{¶37}**  This Court may modify or vacate a felony sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1.  Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross*, 161 Ohio St. 469 at paragraph three of the syllabus.

**{¶38}**  R.C. 2929.14(C)(4) requires trial courts to make certain findings before imposing consecutive sentences:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

To impose consecutive sentences, "a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry * * *." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, syllabus. The court is not required to explain its findings or include "'a word-for-word recitation of the language of the statute * * *.'" *State v. Brundage*, 9th Dist. Summit No. 29477, 2020-Ohio-653, ¶ 17, quoting *Bonnell* at ¶ 29. Nevertheless, a reviewing court must be able to "discern that the trial court engaged in the correct analysis" and conclude "that the record contains evidence to support the [trial court's] findings." *Bonnell* at ¶ 29. If it is impossible to discern whether the trial court engaged in the correct analysis or made the required statutory findings, the imposition of consecutive sentences must be reversed, and the matter must be remanded for resentencing so that the trial court "can properly consider R.C. 2929.14(C)(4) and make the necessary findings." *State v. Callaghan*, 9th Dist. Summit No. 29431, 2021-Ohio-1047, ¶ 24-25. *See also State v. Mellott*, 9th Dist. Wayne Nos. 16AP0081, 16AP0082, 2017-Ohio-7545, ¶ 16.

{¶39} At the sentencing hearing, the trial court ordered Mr. Gales' prison terms for trafficking in cocaine and having a weapon under disability to run consecutively. The court indicated that it was ordering consecutive service "based on [Mr. Gales'] prior record" and its finding that "it [was] necessary in order to protect the public and punish the offender." The court did not make any additional findings regarding consecutive service at the sentencing hearing. In its sentencing entry, however, the court wrote that consecutive sentences (1) were necessary to

protect the public from future crime or to punish Mr. Gales, *see* R.C. 2929.14(C)(4), (2) were not disproportionate to the seriousness of his conduct and to the danger he posed to the public, *see id.*, and (3) were necessary to protect the public from future crime based on his criminal history, *see* R.C. 2929.14(C)(4)(c).

{¶40} The record supports the conclusion that the trial court failed to make each of the required statutory findings under R.C. 2929.14(C)(4) at Mr. Gales' sentencing hearing. Even if the court's statement about his prior record constituted a finding under R.C. 2929.14(C)(4)(c), the court failed to find that consecutive sentences would not be disproportionate to the seriousness of Mr. Gales' conduct and to the danger he posed to the public. *See* R.C. 2929.14(C)(4). The fact that the trial court later included that finding in its sentencing entry is inapposite, as it was required to make its statutory findings at the sentencing hearing as well as in its written entry. *See State v. Finch-Ball*, 9th Dist. Summit Nos. 29821, 29822, 2021-Ohio-2221 ¶ 15, citing *Bonnell* at syllabus. Because the record reflects and the State concedes that the trial court failed to make the required statutory findings, the imposition of consecutive sentences must be reversed, and the matter must be remanded for resentencing so that the trial court "can properly consider R.C. 2929.14(C)(4) and make the necessary findings." *Callaghan* at ¶ 25; *Mellott* at ¶ 16. Mr. Gales' fourth assignment of error is sustained.

**ASSIGNMENT OF ERROR III**

**[MR. GALES'] IMPOSED CONSECUTIVE SENTENCE WAS CONTRARY
TO LAW, AND NOT SUPPORTED BY THE RECORD.**

{¶41} In his third assignment of error, Mr. Gales argues that the trial court erred when it imposed a consecutive sentence upon him, as the imposition of a consecutive sentence is not supported by the record. Based on our resolution of Mr. Gales' fourth assignment of error, his third assignment of error is moot, and we decline to address it. *See State v. Duffy*, 9th Dist. Lorain

Nos. 18CA011342, 18CA011343, 18CA011344, 18CA011345, 18CA011346, 18CA011347, 18CA011348, 18CA011349, 2020-Ohio-3137, ¶ 26; App.R. 12(A)(1)(c).

III.

**{¶42}** Mr. Gales' fourth and fifth assignments of error are sustained. Mr. Gales' first, second, sixth, and seventh assignments of error are overruled, and his third assignment of error is moot. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

                                        _____
                                        BETTY SUTTON
                                        FOR THE COURT


HENSAL, P. J.
CARR, J.
CONCUR.


APPEARANCES:

MYRON P. WATSON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.